Filed 1/28/26  P. v. Robles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B337577 |
| Plaintiff and Respondent, | Los Angeles County |
| | Super. Ct. No. |
| v. | XWESA059334-01 |
| DAVID ROBLES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

David Robles appeals the superior court's order denying his Penal Code section 1172.6[1] resentencing petition at the prima facie stage. Robles contends the superior court erred because the conspiracy instructions given at his trial allowed the jury to convict him of murder and attempted murder under the natural and probable consequences doctrine and without finding he acted with malice. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The crimes, convictions, and appeal*

In 2006, the People charged Robles, along with his co-defendant Jessie Garcia, with the murders of Michael Juarez and Anthony Juarez, as well as the attempted murders of Matthew Vaughn and Frank Juarez. The People alleged the murders were "a special circumstance within the meaning of Penal Code Section 190.2(a)(3)," multiple murder. The People also alleged the defendants committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang and—as to Garcia—that a principal used and discharged a firearm causing death or great bodily injury to the victims. The People alleged Robles had several prior strikes, including robbery, assault with a deadly weapon, and false imprisonment with a gun.

As the facts of Robles's crimes are irrelevant to our analysis, we summarize them only briefly.[2] Robles and Garcia

---

[1]     References to statutes are to the Penal Code.

[2]     We take judicial notice of the file in Robles's direct appeal, *People v. Robles et al.* (February 25, 2014, B232828) [nonpub. opn.] (*Robles I*). As the truth of the facts of the crimes recited in *Robles I* are not necessary for our resolution of this appeal,

2

were cousins, roommates, and gang members. Frank Juarez had a clothing store in Santa Monica; his co-owner, Arturo Arce, was a gang member. On October 27, 1998, Frank was at the store preparing for its grand opening. His cousins Michael and Anthony Juarez were with him, along with an acquaintance, Matthew Vaughn. "Just before noon, three masked men entered the store and fired multiple rounds" "randomly." (*Robles I.*) "The gunmen then fled to a waiting car." (*Ibid.*) Michael had been shot 13 times and died. "Anthony, who had suffered five gunshot wounds, was still breathing but died minutes later." (*Ibid.*) Frank and Vaughn both were wounded but survived. Witnesses at a fast food restaurant across the street "heard multiple gunshots fired in rapid succession" and "saw three men, wearing long coats and carrying long guns," come out of the store and run to a waiting car that sped away. (*Ibid.*) Robles later was identified as the driver. (*Ibid.*)

The case went to trial in 2011. The trial court instructed the jury on direct aiding and abetting (CALJIC Nos. 3.00 and 3.01), first and second degree murder (CALJIC Nos. 8.00, 8.10, 8.20, and 8.30), and conspiracy to commit murder (CALJIC Nos. 6.10.5, 6.11–6.14, and 6.16–6.21). The court did not instruct the jury on the felony-murder rule or aiding and abetting under the natural and probable consequences doctrine.

The jury convicted Robles and Garcia of the first degree murders of Michael and Anthony Juarez as well as the attempted willful, deliberate, and premeditated murders of Vaughn and Frank Juarez. The jury found the special circumstance

---

we summarize them only for the basis of Robles's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)

allegation true.  The trial court sentenced Robles to life without the possibility of parole on the Anthony Juarez murder, 25 years to life on the Michael Juarez murder, and seven years to life on each of the attempted murders, all to be served consecutively. A different panel of this court affirmed Robles's convictions. (*Robles I*.)

## 2.  *Robles's first resentencing petition*

After Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect, Robles filed a petition for resentencing under section 1172.6.[3]  The petition essentially recited the language of the statute.  The court issued a minute order denying Robles's petition.  The court stated, "Petitioner claims that he was convicted on the natural and probable consequences theory. The record of conviction, however, belies that claim.  The jury was not instructed on either felony-murder or the natural and probable consequence[s] doctrine."

On appeal, Robles argued the superior court erred in denying his petition without appointing counsel.  A different panel of this court affirmed the order, explaining any errors the superior court committed were harmless because the record of conviction showed Robles is ineligible for resentencing as a matter of law.[4]  We noted the jury in the underlying trial was not instructed on either the natural and probable consequences

---

[3]     Robles filed the petition under former section 1170.95, which was later renumbered to section 1172.6.  For the sake of simplicity, we refer only to section 1172.6.

[4]     We take judicial notice of our opinion in Robles's appeal of the denial of his first petition, *People v. Robles* (September 27, 2021, B306498) [nonpub. opn.] (*Robles II*).

4

doctrine or the felony-murder rule.  Therefore, the instructions conclusively demonstrated Robles could not show he could not be convicted because of the changes to section 188 or 189 made by Senate Bill 1437.  (*Robles II*.)

3.    ***Robles's second resentencing petition***

On November 18, 2022—after Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) took effect—Robles filed a new petition for resentencing under section 1172.6.  In this petition, Robles checked a box stating an information had been filed against him "that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ."  He also asserted he could "not presently be convicted of murder or attempted murder because of changes made" to sections 188 and 189.

The People opposed the petition, arguing the jury was not instructed on felony murder, the natural and probable consequences doctrine, or any other theory in which malice could be imputed to Robles based solely on his participation in a crime.  Robles responded that the jury instructions on conspiracy —CALJIC Nos. 6.10.5, 6.11, and 6.16—allowed the jury to convict him under the natural and probable consequences doctrine or some other theory of imputed malice.  He noted that, although the conspiracy instructions required the jury to find two or more people agreed to commit murder, they did not specify that Robles had to be one of those people.

The superior court considered the petition at an April 2024 hearing and determined Robles failed to make a prima facie showing that he is entitled to relief.  The court rejected Robles's

5

arguments related to the conspiracy instructions, explaining vicarious liability under a conspiracy theory is not the same as under the natural and probable consequences doctrine. The court also noted the instructions required the jury to find Robles harbored express malice to convict him, even under a conspiracy theory.

The court acknowledged one of the jury instructions—CALJIC No. 6.16—used the phrase "natural and probable consequence[ ]." However, the court explained the instruction provided a limitation on extending liability to conspirators beyond the agreed upon crime to be committed; it did not allow the jury to impute liability under the natural and probable consequences doctrine.

The court concluded the "only viable theories given to the jury" to convict Robles of murder and attempted murder required it to find he harbored express malice. Therefore, the record of conviction refutes Robles's allegation that he could not be convicted because of the changes to sections 188 and 189. Accordingly, the court denied the petition without issuing an order to show cause.

Robles timely appealed.

## DISCUSSION

1. ***Relevant law and standard of review***

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a theory of murder liability and limited the scope of the felony murder rule. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Senate Bill 1437 also provided an avenue for a person convicted under the former law to petition the sentencing

6

court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law. (*People v. Strong* (2022) 13 Cal.5th 698, 708–709; *Lewis*, at pp. 959–960.)

Senate Bill 775, effective January 1, 2022, extended resentencing eligibility to individuals convicted of attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1(a).) It also extended eligibility to individuals convicted of murder under any "theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Id.* at § 2.)

If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested. (*Lewis, supra*, 11 Cal.5th at pp. 962–963; see § 1172.6, subd. (b)(1)(A), (3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that he is entitled to relief. (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, the court takes the petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his factual allegations were proved. If so, the court must issue an order to show cause. (*Lewis, supra*, 11 Cal.5th at p. 971; see *People v. Curiel* (2023) 15 Cal.5th 433, 463–464 (*Curiel*).) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at pp. 971–972; see *Curiel*, at pp. 463–464; *People*

7

*v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)  The jury instructions and verdicts are part of the record of conviction. (See *People v. Antonelli* (2025) 17 Cal.5th 719, 731.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.) But if the record of conviction contains facts refuting the allegations made in the petition, the trial court is justified in rejecting them.  (*Eynon*, at p. 975; see *Lewis*, at p. 971.)

We independently review the denial of a resentencing petition at the prima facie stage.  (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238.)

### 2. *The conspiracy jury instructions*

The trial court instructed Robles's jury with modified versions of the standard CALJIC instructions.  Those instructions allowed the jury to convict Robles of murder and attempted murder under three theories:  (1) as a direct perpetrator; (2) as a direct aider and abettor; or (3) as a member of a conspiracy.  Robles's arguments on appeal concern only the conspiracy theory of liability.

As relevant to this appeal, the trial court's CALJIC No. 6.10.5 instruction told the jury a "conspiracy is an agreement between two or more persons with the specific intent to agree to commit the crime of murder, and with the further specific intent to commit that crime, followed by an overt act committed . . . by one or more of the parties for the purpose of accomplishing the object of the agreement."

The court's CALJIC No. 6.11 instruction told the jury "[e]ach member of a criminal conspiracy is liable for each act

8

and bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy."[5]

The court's CALJIC No. 6.16 instruction told the jury, "[w]here a conspirator commits an act or makes a declaration which is neither in furtherance of the object of the conspiracy nor the natural and probable consequence of an attempt to attain that object, he alone is responsible for and is bound by that act or declaration, and no criminal responsibility therefor attaches to any of his confederates."

Finally, the court's CALJIC No. 6.19 instruction told the jury "[e]very person who joins a conspiracy after its formation is liable for and bound by the acts committed and declarations made by other members in pursuance and furtherance of the conspiracy during the time that he is a member of the conspiracy."

3. ***Robles failed to make a prima facie showing with respect to the murder conviction***

Robles contends the trial court erroneously found he failed to make a prima facie showing with respect to one of his murder

---

[5] The standard CALJIC No. 6.11 instruction also stated a "member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime/act of a co-conspirator to further the object of the conspiracy, even though that crime/act was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime/act." The trial court omitted that language from the instruction it gave to Robles's jury. Robles did not raise that issue in his direct appeal of the judgment. Nor does he raise it in this appeal.

9

convictions.[6] Robles does not challenge our determination in *Robles II* that the trial court did not instruct the jury on murder under the felony-murder rule or the natural and probable consequences doctrine. Instead, he argues there was an ambiguity in the court's conspiracy instructions that allowed the jury to convict him of murder by imputing malice to him.

Robles points to the trial court's CALJIC No. 6.10.5 instruction, which told the jury a "conspiracy is an agreement between two or more persons with the specific intent to agree to commit the crime of murder, and with the further specific intent to commit that crime . . . ." Robles notes the instruction did not expressly require the jury to find he was one of the " 'two or more persons' " with the intent to commit murder. Therefore, Robles argues, it allowed the jury to find he was a member of a conspiracy to commit murder without having to find he acted with the specific intent to murder. If so, the jury could have convicted him of murder by imputing malice to him.

Robles asserts the instructions at issue in *People v. Petznick* (2003) 114 Cal.App.4th 663 (*Petznick*) contained a comparable ambiguity. In *Petznick*, the People charged the defendant with conspiring to commit murder with three other people. (See *id.* at p. 668.) During deliberations, the jury asked the court if conspiracy to commit murder requires all four coconspirators to have harbored express malice. (*Id.* at pp. 678–679.) The jury explained it was asking the question

---

[6]    Robles concedes the multiple-murder special circumstance finding conclusively shows the jury did not impute malice to him with respect to one murder conviction. However, he contends the finding did not preclude the jury from imputing malice as to the other conviction.

10

because the court's CALJIC No. 6.11 instruction " 'indicates that members of a conspiracy are liable for the natural and probable consequences of the act without all 4 participants having expressed malice aforethought.' " (*Petznick*, at p. 679.)  The trial court responded that, to convict the defendant of conspiracy to commit murder, the jury had to find " '[t]wo or more persons entered into an agreement to kill' " and " '*[a]t least two of the persons* to the agreement' " intended to kill.  (*Id*. at pp. 678–680.)  The trial court apparently took this language from a version of CALJIC No. 8.69 intended for situations where there is a feigned accomplice, such as a government agent.  (See *Petznick*, at p. 680, fn. 3.)  The jury ultimately convicted the defendant.  (*Id*. at p. 668.)

On appeal, the defendant argued the trial court's response improperly allowed the jury to convict him of conspiracy to commit murder without finding he possessed an intent to kill. (*Petznick, supra*, 114 Cal.App.4th at p. 678.)  The court agreed, explaining, "to be guilty of the crime of conspiring to commit murder, [the defendant] had to have been one of the participants who harbored the specific intent to kill.  [Citation.]  The [trial court's response] does not say that.  It says only that 'at least two' of the participants must have intended to kill and does not specify that defendant must have been one of them.  Since the jury was aware that there were four participants, the instruction erroneously permitted the jury to find defendant guilty of conspiracy to commit murder without regard to whether or not he personally intended to kill so long as they found that at least

two of the other participants harbored that intent." (*Id*. at pp. 680–681.)[7]

Robles's reliance on *Petznick* is misplaced. The trial court in *Petznick* told the jury conspiracy to commit murder requires an agreement to kill by two or more persons and a specific intent to kill by "*at least two*" of those persons. (*Petznick, supra*, 114 Cal.App.4th at pp. 678–680.) This language was misleading because it implied a person could be a member of a conspiracy to commit murder without possessing an intent to kill. Therefore, it left open the possibility—however unlikely— that the jury would convict the defendant of conspiracy to commit murder because he entered into an agreement to kill without having intended to kill.

Here, the trial court did not instruct Robles's jury it must find "at least two" members of the conspiracy intended to commit murder. Instead, the court's CALJIC No. 6.10.5 instruction told the jury a conspiracy to commit murder requires "an agreement between two or more persons with the specific intent . . . to commit . . . murder." This language does not differentiate between members of the conspiracy who merely agree to murder, and those who also intend to murder. Instead, it implies every member of the conspiracy must agree to murder and do so with the intent to commit murder.

---

[7] The California Supreme Court cited *Petznick* for the proposition that "[a]sking the jury to find specific intent for 'at least two' conspirators in a conspiracy with more than two members, none of whom is feigning involvement, could potentially lead a jury to find an individual conspirator guilty without finding that he or she possessed a specific intent to agree or to kill." (*People v. Garton* (2018) 4 Cal.5th 485, 516.)

12

Accordingly, for the jury to find Robles was a member of a conspiracy to commit murder under CALJIC No. 6.10.5, it had to find he agreed to murder with the intent to murder. Because the court's CALJIC No. 8.10 instruction defined murder as a killing with malice aforethought, the jury would have understood it could convict Robles under a conspiracy theory only if it found he joined the conspiracy with malice. In other words, the instructions did not allow the jury to convict Robles of murder under a conspiracy theory without having found he personally acted with malice. Therefore, the superior court properly determined Robles failed to make a prima facie showing with respect to the murder conviction. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 181, 185 & fn. 4 (*Medrano*) [defendant failed to make prima facie showing where the trial court instructed the jury with CALJIC No. 6.10, which is identical to CALJIC No. 6.10.5 in all relevant respects].)

4. ***Robles failed to make a prima facie showing with respect to the attempted murder convictions***

Robles contends he made a prima facie showing under section 1172.6 with respect to his convictions for attempted murder. According to Robles, the trial court's conspiracy instructions—specifically CALJIC Nos. 6.11, 6.16, and 6.19— allowed the jury to convict him of attempted murder if it found: (1) he was a member of a conspiracy to commit murder; (2) during the commission of the murder, a coconspirator committed attempted murder; and (3) the attempted murder was in furtherance of, and a natural and probable consequence of, the conspiracy to commit murder. Therefore, Robles argues, the jury could have convicted him of attempted murder under the

13

natural and probable consequences doctrine and without having to find he personally acted with malice.

Even assuming the jury understood the instructions in the way Robles suggests, they did not allow the jury to convict him under a natural and probable consequences theory. In order to apply CALJIC No. 6.11, 6.16, or 6.19, the jury first had to find Robles was a member of a conspiracy. The court's CALJIC No. 6.10.5 instruction defined "conspiracy" as an "agreement between two or more persons with the specific intent to agree to commit the crime of murder, and with the further specific intent to commit that crime." The court did not instruct the jury on a conspiracy to commit any other crime. Therefore, the only conspiracy Robles could have been a member of was a conspiracy to commit murder.

According to the California Supreme Court, where a defendant is "charged with conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder," there is "no possibility" the defendant was "found guilty of murder on a natural and probable consequences theory." (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 645; see *Medrano, supra*, 68 Cal.App.5th at p. 184 [where defendant was convicted of conspiracy to commit first degree murder, jury conclusively did not rely on the natural and probable consequences doctrine to convict him of murder].) The same is true of Robles's convictions for attempted murder. (See *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 867 ["the natural and probable consequences instruction as applied to a conspiracy . . . is problematic [for purposes of section 1172.6] only where a defendant is convicted of murder or attempted murder based on a conspiracy to commit

14

'a lesser crime that resulted in murder' "], review den. July 24, 2024.)

Nor did the conspiracy instructions otherwise allow the jury to convict Robles by imputing malice to him based solely on his participation in a crime. *People v. Nguyen* (2024) 103 Cal.App.5th 668, review denied September 18, 2024 (*Nguyen*), is instructive. In that case, a jury convicted the defendant of three counts of first degree murder after he and a group of gunmen killed three members of a rival gang. (*Id*. at pp. 672, 673–674.) The defendant petitioned for resentencing on the ground that the standard CALJIC conspiracy instructions allowed the jury to convict him of murder by imputing malice to him. (*Id*. at pp. 672–673, 678.) The defendant pointed to language in CALJIC No. 6.11 stating each member of a conspiracy is liable for a coconspirator's acts in furtherance of the object of the conspiracy. (*Nguyen*, at pp. 674–675, 678.) According to the defendant, that instruction allowed the jury to convict him under an imputed malice theory if it found he joined a conspiracy to murder one victim, and his coconspirators independently killed the other victims solely as acts in furtherance of the conspiracy. (*Id*. at p. 678.)

The *Nguyen* court rejected the defendant's argument and held he failed to make a prima facie showing under section 1172.6. (*Nguyen, supra*, 103 Cal.App.5th at p. 673.) The court explained the defendant wrongly assumed "that if he intended to kill one person, but another person whom he did not intend to kill was killed in furtherance of the conspiracy, the jury could not have convicted him of murdering that other person without imputing malice to him. This misconceives the nature of malice. Express malice does not mean an intent to kill a *specific person*;

15

it is defined as the intent to unlawfully kill *a* person. . . . Accordingly, liability for express malice murder does not require a finding that the defendant specifically intended to kill the deceased victim(s). 'A defendant can be liable for the unlawful killings of both the intended victims and any unintended victims.' " (*Id.* at p. 679.)

The *Nguyen* court further explained that "[s]ections 1172.6 and 188 both circumscribe liability for murder based on malice that is 'imputed to a person based *solely on his or her participation in a crime.*' [Citations.] Whether the jury relied on a theory of conspiracy to commit murder, . . . the jury could not have convicted [the defendant] of first degree murder without finding he personally harbored an intent to kill unlawfully. And while participation in a conspiracy to commit murder constitutes 'participation in a crime,' a jury can find a defendant harbored express malice without finding the defendant participated in a conspiracy. Because the jury's finding of malice was not based solely on [the defendant's] participation in any crime, the jury did not impute malice to [the defendant] in any way that would be impermissible under the plain language of section 1172.6 or section 188." (*Nguyen, supra,* 103 Cal.App.5th at p. 685.)

*People v. Allen* (2023) 97 Cal.App.5th 389, review denied January 31, 2024 (*Allen*), is even more on point. In *Allen*, the defendant and other members of his gang drove into a rival gang's territory, looking for people to shoot in retaliation for an earlier shooting. They shot two men whom they wrongly believed were members of a rival gang, killing one. (*Id.* at p. 392.) The trial court instructed the jury it could convict the defendant of murder and attempted murder under a conspiracy theory. On the attempted murder count, the court specifically

16

instructed the jury it could convict the defendant if he was a member of a conspiracy to commit murder, a coconspirator committed attempted murder to further the conspiracy, and attempted murder was a natural and probable consequence of the conspiracy to commit murder.  The jury convicted the defendant of both offenses.  (*Id*. at pp. 392–394.)

The defendant filed a petition for resentencing, which the trial court denied at the prima facie stage.  (*Allen*, *supra*, 97 Cal.App.5th at p. 394.)  The Court of Appeal affirmed, concluding the defendant was ineligible for relief as a matter of law.  (*Id*. at pp. 395, 398.)  The court reasoned, to "convict [the defendant] of the attempted murder . . . as a coconspirator, the trial court told jurors that they had to conclude that [the defendant] conspired to commit murder.  That, in turn, required them to find that he harbored the intent to kill." (*Id*. at p. 396.)  The court explained it was irrelevant that the jury did not have to find the defendant intended to kill the specific victims, because " 'the "intent to kill need not be directed at a specific person." ' [Citation.] ' "The social harm of murder is the 'killing of a human being by another human being.' " ' [Citation.] . . .  Thus, under current California law, 'conspiracy to commit murder may be based on an agreement to kill " 'a human being' " who is not specifically identified.' [Citation.]  That [the defendant] and his coconspirators did not conspire to kill [the victims] *specifically* is not relevant." (*Ibid*.)

Here, as in *Nguyen* and *Allen*, the trial court instructed Robles's jury only on a conspiracy to commit murder.  As we discussed above, to find Robles joined such a conspiracy, the instructions required the jury to find he agreed to commit murder with malice.  Accordingly, to convict Robles of an attempted

murder under a conspiracy theory, the jury had to find he acted with malice. That theory of attempted murder remains valid under current law. (See *Curiel, supra*, 15 Cal.5th at p. 462 [Senate Bill 1437 "sought to limit murder liability to established theories that incorporated the requisite intent" of personal malice].) The fact that Robles's malice might have been directed at someone other than the victims of the attempted murders is irrelevant. Robles's "liability as a member of a conspiracy to commit . . . murder required the jury to find [he] possessed malice aforethought, and his liability for any coconspirators' acts in furtherance followed." (*Nguyen, supra*, 103 Cal.App.5th at p. 681.)

Because the trial court instructed the jury only on theories of attempted murder that remain valid after Senate Bill 1437, the record of conviction conclusively refutes Robles's allegation that he could not be convicted because of the changes to sections 188 and 189. Accordingly, the superior court properly denied Robles's section 1172.6 petition at the prima facie stage. (See *Allen, supra*, 97 Cal.App.5th at p. 395 [a petitioner is ineligible for relief "if the record of conviction shows that their conviction was based on a theory of liability that remains valid under Senate Bill 1437"]; see also *Curiel, supra*, 15 Cal.5th at p. 463 [a petitioner fails to make a prima facie showing where the jury's findings refute the allegation that he could not currently be convicted of murder because of the statutory changes].)

18

## DISPOSITION

We affirm the order denying David Robles's petition for resentencing.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

EDMON, P. J.

HANASONO, J.